*McFARLAND, sheriff, *against* CRARY and McLEAN.

M'Farland
v.
Crary.

ASSUMPSIT for money had and received; tried at the Washington circuit, November 5th, 1826, before WALWORTH, C. Judge.

It was admitted at the trial, that in 1823, one Wilson brought trover, in this court, against the now plaintiff, then a deputy sheriff, for property taken by him under a *fi. fa.*, against one Waters, in favor of one Billings. Judgment of non-suit was obtained against Wilson in May term, 1824. One Root also sued the plaintiff in trover, for a like cause, which action was tried in 1824, and Root non-suited; and judgment of non suit perfected. The defendant being sued for an official act, recovered double costs in both causes, which were defended by Crary and McLean, the present defendants, as attorneys. Mr. McLean received the double costs from the plaintiff in each cause, amounting to about $150 in the first, and $220 in the last mentioned cause; and signed a receipt for the money, "Crary & McLean." Billings agreed to indemnify the plaintiff, McFarland, against both actions, and the suits were defended by Crary & McLean on Billings' retainer. Before the commencement of this suit, McFarland demanded of Mr. McLean all the costs over and above single costs, which Mr. McLean refused to pay, claiming them as due to the attorneys, except McFarland's disbursements.

The defendants moved for a non-suit, on the ground, 1. That the costs were received by Mr. McLean alone, and were demandable of him alone in an action; 2. That the measure of the attorney's compensation, as between him and his client, is the taxed bill, which, in this instance, being double costs, the attorneys were entitled to them; 3. *That the action, if maintainable at all, could be maintained by Billings only, not the plaintiff.

The judge overruled the first and third objections; but

*Margin notes:*
Where an attorney appears and defends for another, and receives money as attorney, due to his assumed client, in an action by the latter against the former, he is estopped to deny that he is attorney. Two attorneys are in partnership. One receives money, in behalf of the firm, due to their client, of whom the client demands the money. This is a receipt by, and a demand of both, who are liable to the client jointly, without any demand upon, or notice to the other. An attorney defends for his client, who obtains judgment; and, being sued as deputy sheriff, is entitled to double costs, which his attorney receives. *Held,* that the attorney is entitled to the double costs, as the measure of his compensation.

[*254]

The rule is, that the costs recovered, and taxable in the cause, as between party and party, are the measure of compensation to the attorney, as between him and the party recovering.

directed a verdict for the plaintiff, subject to the o of this court on the second, which the jury found accordingly.

*J. Crary*, for the defendants, now moved for a new trial on the first and third points, or for judgment in favor of the defendants on the second.

He said, here could be no relation of attorney and client between the plaintiff and defendants. No evidence whatever was given of a retainer by the plaintiff. (9 John. 142.) Billings was beneficially interested. The retainer was his, and to him alone are the defendants accountable. It is like the case of an action in favor of McFarland in trust for Billings. On a recovery, the money would go to Billing; or, suppose a defeat, Billings would be accountable to the opposite party. The *cestui que trust* is accountable to the attorney, and he alone can sue the attorney for negligence.

The action should have been against Mr. McLean alone. Suppose the money wrongfully withheld by him; it is an act for which the firm are not accountable. At any rate, the demand should have been made of both. They were trustees, and neither liable to be called on by suit to account, without previous notice. (Ham. on Part. to Actions, 97; 4 John. 23; 19 John. 109, 428; 10 John. 387; 2 T. R. 366; 2 H. Bl. 563, note; 1 Esp. Rep. 361; 5 Cowen, 376.)

The attorney, after he has defended a suit, is not confined to a *quantum meruit* for his services. The language of the statute is the same in all cases of recovery. It declares that the party shall recover costs. What costs? The answer is, according to the taxed bill. It is the same as between the attorney and client. This is so as to single, and why not as to double costs? (3 Cain 165; 3 John. 245; 12 id. 315; 1 Dunl. Pr. 76.)

*J. Willard*, contra. The object of the statute, (1 R. L. 155,) giving double costs to an officer recovering in a suit [*255] *against him for an official act, was not only to punish the

adverse party, and thus protect officers against vexatious. suits, (5 Taunt. 820,) but also to indemnify them against extraordinary losses and expenses. The latter purpose is not answered, if the whole be given to the attorney. It is the fee bill which forms the measure of compensation as between attorney and client; that is, single costs. It is not merely the attorney's costs that are doubled. The fees to the other officers, clerk's, sheriff's, crier's fees, &c., are all doubled in the recovery. Can they, too, receive and retain double costs, or recover them of the party? The true test is the sum which would have been due from the client, had he been defeated, and an action for fees been brought by the attorneys. Clearly they could have recovered no more than single costs. If the amount of the taxed bill, on the recovery of judgment against the opposite party, be the measure, as is now contended, what becomes of the attorney's fees on a *sci. fa.* where the defendant does not interpose a defence, or in the various real actions? There no costs are recovered by the party. Does it not follow that he is bound to pay his attorney nothing? It is only under the notion of lien that the attorney is entitled to the taxed bill at all. Independent of that, the rule is exactly as it would have been at common law, before costs were given to the successful party. In *Reeder* v. *Bloom*, (3 Bing. 9,) it was held that a party shall recover full costs, though his cause was conducted by an attorney not on the roll, or by one who is not an attorney.

Billings had nothing to do with the judgment. He defended for his own benefit, and though he did indemnify, yet M'Farland was liable in the first instance, and was compelled to run the risk of the indemnity's insolvency. M'Farland was bound to sell on the offer of an indemnity. A sheriff is not warranted in refusing, even by an inquisition. (15 John. 147.) There was no assignment of the judgment to Billings, express or implied.

*There cannot be a doubt that both parties were liable; and demanding the money of one was sufficient. (3 John. 68; 6 John. 267.)

[*256]

*S. Stevens*, in reply. There can be no doubt upon au- thority, that if the defendants were accountable at all, it was as trustees; and it is equally clear that one trustee is not accountable for the independent disconnected act of another. Crary has neither acted, nor has there been any demand upon him.

These costs were earned by the attorneys. They are the fair price of their labor, to which the client has no title. The measure of the attorney's compensation is always the amount recovered. *Scott* v. *Elmendorf*, (12 John. 315,) settles the question, where the demand rests on the impli- ed assumpsit. There is no statute which gives a recovery of costs to the attorney *eo nomine;* yet, both authority and practice make that recovery the measure of his compensa- tion. The statutes giving costs have been extended by construction to the attorney. Double costs are no more in- tended as a punishment to one party and indemnity to the other, than single costs. The objects are the same in both cases. The principle of *Scott* v. *Elmendorf*, then, which de- clares common pleas costs the measure as between attorney and client, where these costs alone are recoverable, ex- tends to all recoveries of costs.

[SUTHERLAND, J., put the case of treble damages and treble costs; and said the adverse argument would go to give the client double costs and treble damages, while the attorney would be confined to his single costs.]

Billings was the real party; and the real client, to whom the balance beyond single costs were due, if to any body The indemnity took away all the interests of the plaintiff. (7 Cowen, 358.) To warrant this action for money had and received, it must belong to the plaintiff *ex equo et bono.* Here is not a pretence of any equitable claim. That lies exclusively with Billings. Being the real party, the money was received to his use if to any *body's. The present effort is to take away the money from those who have earned it and give it to a mere idle spectator. The law will not imply a promise for such a purpose.

[*257]

*Curia, per* SAVAGE, Ch. J. Three questions arise in this

case: 1. Did the relation of attorney and client exist between these parties?

2. If so, is the action rightly brought against both defendants?

3. Is the party or the attorney entitled to the double of the costs?

1. There is no doubt that the present plaintiff was the real defendant in the suits brought against him, for an alleged violation of his duty as an officer. The defendants were the attorneys upon the record for him. By virtue of a supposed retainer by him, they became entitled to the bill of costs, which they received. I think they are estopped from denying that they were his attorneys. That they were in fact employed by Billings, who had indemnified the deputy, does not, in my judgment, affect the question. M'Farland must have employed an attorney if Billings had not. Billings, I think, must be considered the agent of M'Farland for that purpose. Suppose Billings had died insolvent before the suit was concluded, and the result had been different, the deputy must undoubtedly have been responsible for the damages; and I can see no reason why he would not have been liable to his attorneys, provided they could show any act of his recognizing them as his attorneys in those causes. Suppose the deputy had made all the advances, as he might have been obliged to do, and probably did do; and that his recourse to Billings had failed by his (B's) death and insolvency, could not the deputy have claimed from the attorneys his disbursements? or could they retain them upon any demand which they might have against Billings? I think, as M'Farland was the real party, and the defendants assumed to act as his attorneys, they were responsible to him as such, and would have been liable for any mismanagement *of his cause. [*258] The deputy cannot be considered a nominal party; but even if he were, and sustained damage by attorneys who used his name, they must be liable over to him.[1]

[1] An attorney is not liable to an action for money collected by him, until demand or direction to remit. *Rathbun* v. *Ingalls*, 7 Wen. 320.

Declarations made by an attorney that he intended to retain money col-

2. As M'Lean alone received the money, and he alone refused to pay it over, it is contended that Crary is not liable.

lected by him for his client, to indemnify him for a fraud in the sale of a horse, do not dispense with the necessity of a demand, unless such declarations were made to the agent of the plaintiff, or came to his knowledge before suit brought. Ib.

An attorney is liable for costs, where he proceeds in a suit after his client has removed out of the state, to the amount of $100, whether the costs accrued before or after such removal. *Wright* v. *Black*, 2 Wen. 258.

Overreaching and oppressive practice. *Smith* v. *Bowen*, 2 Wend. 245.

Money collected by an attorney for his client must be demanded, or direction to remit be given and neglected, before suit can be brought therefor; but there may be a waiver of demand, for instance denial of liability to pay, and setting up claim for a larger amount than that collected. The discretionary authority of an attorney ends when judgment is perfected. *Walradt* v. *Maynard*, 3 Barb. 584.

One of two attorneys in partnership receives money in behalf of the firm, due to their client. From him the client demands the money. This is sufficient, and both are liable jointly without any demand upon, or notice to the other. Ib.

An attorney is not liable to a suit for money collected for another, until demand made or direction to remit. *Taylor* v. *Bates*, 5 Cow. 376.

He is not in default until he receives directions from his principal. Ib.

T., an assignee of a demand, left with an attorney for collection, assigned it to another, except $50, of which the attorney had notice, and then received the money; an action, for money had and received, would lie in the name of T. against the attorney for the $50, but no more. Ib.

His assignee should sue for the residue. Ib.

The money was received for the use of those who had rights as assignees respectively, but neither could sue till demand made of the attorney. Ib.

Money collected by an attorney for his client, must be demanded before the client can move for an attachment for its non-payment. *Ex parte Ferguson*, 6 Cow. 596.

Where a bond was left with an attorney of this court, to the end that he should write to the obligor, and obtain the money; but without any express direction to bring a suit in default of payment, the attorney having received the money without suit, and neglected to pay it over, on demand, to his client; held, that he received the bond to collect in his character of attorney; and that an attachment should issue against him, unless he paid over the money. *Ex parte Staats*, 4 Cow. 76; *Matter of Knight*, 4 Cow. 77, n. a.

And it is not essential, in any case, that the attorney received the money in any legal proceeding; it is enough that he has received the money in his character of attorney. *Matter of Dakin*, 4 Hill, 42.

And when the particular character, in which he was employed, does not

The defendants are partners, and constitute but one person in law. The act of one in the business which constitutes the subject matter of the partnership, is the act of all the partners, at least *civiliter*. If one of two attorneys who are partners, receives money collected for a client, and absconds with it, that forms no defence to the other partner. If one should be guilty of extortion, though the other could not be punished criminally, yet he would be liable to repay what had been illegally received. The cases cited of trustees, and of a surety, and others individually liable, do not apply. The defendants are partners, and liable as such, if at all.[1]

3. The main point in the cause is, whether the attorney or the client is entitled to the double costs?

On the part of the plaintiff, it is contended that the double costs are given as a compensation for a supposed oppression, committed by the original plaintiff in bringing the action. But why is there any more oppression in suing an officer than in suing any other person? It costs him no more to defend a suit than any other. The law, I apprehend, proceeds upon the ground of a presumption that

affirmatively appear, it may be inferred from the nature of the employment, and other circumstances. Ib.

If the circumstances afford a presumption that he was not employed in his professional character, an attachment will not lie. Ib.

If the imputed default of the attorney arise in relation to business connected with a suit, the attachment must be applied for in the court in which the suit was prosecuted. *In the matter of Kursheedt*, 4 Hill, 564.

The court will always look into the dealings between attorney and client, and guard the latter from imposition. *Starr* v. *Vanderheyden*, 9 J. R. 253.

For refusing or neglecting to pay over money collected for his client, a rule was granted, for the attorney to show cause why an attachment should not issue. *The People* v. *Wilson*, 5 J. R. 368.

The court will relieve in a summary way against the misconduct of an attorney. *The People* v. *Smith*, 3 Cai. R. 221.

So, where an attorney retains money collected for his client, the court ordered him to exhibit his counter demands and pay the balance within a limited time, or that an attachment issue. Ib. 1 N. Y. Dig., pp. 223, 224, Nos. 117, *et seq.*

[1] As to how far partners liable for each others acts. See Waterman's Am. Ch. Dig. vol. 3, tit. *Partnership*; N. Y. Dig., ib.

every officer will act correctly; and that a failure in a suit against him is evidence of malice on the part of the plaintiff, for which he should be punished by imposing double costs. It may also have been intended by the legislature that officers should not unnecessarily be called from their official duties to defend groundless suits.

But, I think this question must depend upon the general principle as to the compensation of attorneys. The rule assumed by the defendants is, that the attorney is entitled to the amount taxed in favor of the client for the attorney's

[*259] services. Hence, in suits in the supreme court, where *the plaintiff recovers a debt or damages exceeding $250, the costs are much higher than if the recovery is under that sum; and it was decided in *Scott* v. *Elmendorf,* (12 John. 315,) that, as between attorney and client, the former can recover no more than the latter recovers from his adversary. This is upon the principle, that the law has marked out the compensation to the attorney in each particular case. Yet the law, it will be recollected, gives to the attorney but one rate of fees in each court, and that law has said, that if the recovery is below a certain sum, the costs shall be but common pleas costs. It is not said that the attorney shall exact less than supreme court fees from his client. This court, however, in construing the statute, did say that such was its true construction. I do not see how this case is different. In certain cases the costs are to be doubled, and in some cases trebled; and they are nominally awarded in favor of the party. But the rights of the attorney is always acknowledged when he takes the necessary measures to secure them.

The correct rule undoubtedly is, that the costs taxable in the cause are the rule of the attorney's compensation. It was objected that, if so, all the officers of court were entitled to double fees. The same rule must apply to them; but that constitutes no objection.

In this case, justice has been done. The attorneys have retained their own double costs, and this they were entitled to.

The defendants are entitled to judgment.

Judgment for the defendants.